1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHEILA BABOT,

Plaintiff,

v.

EQUILON ENTERPRISES LLC,

Defendant.

Case No. 18-cv-04802-DMR

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 51

Plaintiff Sheila Babot filed a complaint against her former employer, Defendant Equilon Enterprises LLC dba Shell Oil Products US ("Shell"), alleging claims under the California Fair Employment and Housing Act ("FEHA"), California Government Code section 12940 et seq., for employment discrimination, harassment, and retaliation, as well as related state law claims. Shell filed a motion for summary judgment, or in the alternative, partial summary judgment. [Docket No. 51.] The court held a hearing on the motion on February 13, 2020. [Docket No. 79.] For the following reasons, the motion is granted in part and denied in part.

I.      **BACKGROUND**

Babot was employed by Shell at its Martinez refinery as a probationary refinery process operator from January 4, 2016 until her termination on October 27, 2016. According to Babot, Rick Duff, a fellow operator, sexually harassed her and subjected her and others to sexist, inappropriate comments and behavior throughout her employment. She further contends that she reported Duff's behavior to her supervisors on several occasions, but that they took no action in response and Duff's behavior continued. Babot alleges that her supervisors retaliated against her for her complaints about Duff by excessively scrutinizing her work, blaming her for mistakes by others, and making negative entries in her employee file. Within weeks of her final complaint about Duff, Shell terminated her employment. She asserts seven claims: 1) harassment based on

sex and/or gender in violation of FEHA, California Government Code section 12940(j); 2) failure to prevent harassment and discrimination in violation of FEHA, California Government Code section 12940(k); 3) sex discrimination in violation of FEHA, California Government Code section 12940(a); 4) retaliation in violation of FEHA, California Government Code section 12940(h); 5) whistleblower retaliation in violation of California Labor Code section 1102.5; 6) wrongful termination in violation of public policy; and 7) intentional infliction of emotional distress.

## II.   OBJECTIONS TO EVIDENCE

Shell argues that the court should disregard certain deposition testimony and statements by Babot in her declaration that she filed in support of her opposition to Shell's motion.  Shell raised this argument for the first time on reply.  At the hearing, the court permitted Babot to submit further citations to her deposition testimony in support of her position.  [*See* Docket No. 79 (Minute Order).]  Babot timely filed the additional citations to evidence.  [Docket No. 80.]

### A.   Complaints about Rick Duff

Shell first asks the court to disregard Babot's deposition testimony and statements in her declaration about her complaints to Shell of "unlawful conduct" by Duff.  Shell contends that Babot did not disclose the information in response to written discovery.  Specifically, Shell's interrogatory no. 10 asked Babot to identify all complaints she made regarding unlawful conduct and to provide details about the complaints, as follows:

> Identify all complaints you made to Defendant regarding any of the unlawful conduct alleged in your Complaint, and separately identify for each such complaint the date you made the complaint, the name of the person you made the complaint to and the manner in which you made the complaint (e.g., in-person, by telephone, by email, etc.)

[Docket No. 53 (Chun Decl., Oct. 10, 2019) ¶ 4, Ex. C.]

Babot served the following response to interrogatory no. 10:

> During her employment, Ms. Babot's supervisors and co-workers observed and witnessed the sexist, demeaning, and hostile work environment to which she was subjected at Shell.  Throughout the summer of 2016, Elzen Wilson was Ms. Babot's supervisor.  Mr. Wilson observed Mr. Duff's inappropriate behavior toward women and overheard many of his vulgar comments.  On or around October 15, 2016, Ms. Babot engaged in protected activity when she raised

1

2

3

> this issue when she asked Mr. Wilson why Mr. Duff was able to set the tone and treat women the way he does.  Mr. Wilson responded that he didn't know, but that his hands were tied and he could not do anything about it.  Nothing was ever done to correct the hostile work environment and it continued throughout Ms. Babot's employment with Shell.

4

> Discovery is continuing.  There may be more information.

5

6

*Id*.  Her response is dated December 13, 2018.  Babot did not amend or supplement this response.

7

Shell deposed Babot in April 2019 and September 2019.  At her April 2019 deposition, Babot

8

testified that she made additional complaints about Duff's conduct to her supervisors, including

9

complaints to Wilson in April or May 2016 and to Allan "Buster" Metcalf in July 2016 and

10

August 2016.  Chun Decl. ¶ 2, Ex. A (Pl.'s Dep.) 41, 51-53, 62-63.  She described these

11

complaints, as well as her mid-October 2016 complaint, in her declaration in support of her

opposition to the present motion.  [Docket No. 63 (Babot Decl., Oct. 24, 2019) ¶¶ 39, 57, 64, 71.]

12

In its reply brief, Shell objects to this testimony, arguing that it contradicts Babot's prior

13

interrogatory response which only identified her October 2016 complaint to Wilson about Duff.

14

Reply 8-9.  Shell asks the court to disregard evidence of any complaints that Babot made about

15

Duff other than the complaint she identified in the interrogatory response, citing *School District*

16

*No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993).

17

*School District IJ* was brought by a school district against manufacturers and installers of

18

asbestos products.  The school district responded to an interrogatory requesting a school-by-

19

school, building-by-building breakdown listing specific asbestos products that had been installed,

20

as well as other information.  *Id*. at 1260.  OCF, a defendant manufacturer, moved for summary

21

judgment as to certain schools that the school district had not identified in its interrogatory

22

response.  *Id*. at 1263.  In opposing the motion, the school district argued that OCF-manufactured

23

asbestos was in the schools despite its failure to identify them in its interrogatory response, and

24

submitted the declaration of Robert Kramer, an asbestos worker who recalled installing the OCF's

25

product in one of the schools.  The Ninth Circuit affirmed the district court's grant of summary

26

judgment, finding that Kramer's declaration did not create a genuine factual dispute:

27

28

> Kramer's affidavit, however, is based on his distant memory.  More significantly, it contradicts the School District's interrogatory

3

1

2

response which was based on the School District's examination of
applicable contract documents.  Kramer's testimony is emasculated
by the School District's clear interrogatory response directly to the
contrary.  His affidavit, therefore, does not pass the "significantly
probative" test of *Liberty Lobby*.  No reasonable juror could rely upon
it to conclude that OCF asbestos was installed at the Edwards school.
Thus, there is no genuine issue for trial on this issue and summary
judgment in favor of OCF with regards to the Edwards school was
proper.

3

4

5

*Id*. at 1264 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986).

6

This case is distinguishable from *School District IJ* because Babot's sworn statements

7

regarding complaints she made to supervisors about Duff's conduct do not contradict her response

8

to interrogatory no. 10.  That response was served early in discovery and contained the statement,

9

"Discovery is continuing.  There may be more information."  This left open the possibility of

10

additional responsive information.  A jury can determine whether Babot's credibility is

11

undermined by the fact that her interrogatory response was incomplete at the time she served it.

12

Moreover, Babot testified about the additional complaints at her deposition, and Shell was on

13

notice of this information in April 2019, which was well before discovery closed in September

14

2019.  For this reason, Babot was not required to supplement her response to interrogatory no. 10.

15

Under Federal Rule of Civil Procedure 26(e)(1), a party responding to discovery has a duty to

16

supplement a discovery response in a timely manner if he or she later learns that "in some material

17

respect the . . . response is incomplete or incorrect."  This duty to supplement does not apply when

18

the "additional or corrective information" was "otherwise . . . made known to the other parties

19

during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  Shell's objections to

20

Babot's testimony and statements in her declaration regarding her complaints to her supervisors

21

about Duff subject are therefore overruled.

22

**B.      Incidents of Harassment**

23

Shell objects to portions of Babot's declaration, claiming that it contradicts her deposition

24

testimony.  Shell argues that when asked at deposition to identify all instances of sexual

25

harassment or inappropriate behavior that she experienced or witnessed, Babot identified six

26

specific incidents.  Mot. 12-13.  However, in her declaration, Babot describes at least eight

27

additional incidents of harassing and/or inappropriate conduct or statements by Duff.  Reply 14

28

4

United States District Court
Northern District of California

n.7; *see*, *e.g.*, Babot Decl. ¶¶ 17, 24-30, 51, 54.  Shell argues that the court should invoke the sham affidavit rule and disregard Babot's statements about any incidents of harassment or inappropriate behavior that she did not identify at her deposition.

The sham affidavit rule "prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony[.]" *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).  The Ninth Circuit has held that the rule "'should be applied with caution' because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id*. The party opposing summary judgment "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id*. at 1081 (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 999 (9th Cir. 2009)).  "[T]he district court must make a factual determination that the contradiction is a sham, and the 'inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit.'" *Id*. at 1080.

The court has carefully reviewed Babot's declaration as well as the deposition citations that she provided.  Her responses to questions posed at her deposition indicate that Duff's alleged problematic behaviors were numerous and pervasive.  Thus, she testified that 1) there were "so many" comments by Duff that were "sexual in nature" and "inappropriate" that it was hard to list them, Pl.'s Dep. 26-27; 2) Duff "would just make jokes all the time, sexual in nature, just inappropriate," *id*. at 38-39; 3) Duff made comments directly to her before turnaround started, and that after the turnaround, she overheard Duff's comments and "announcement[s]" to other people that were "sexual in nature," *id*. at 45-49; 4) Duff made references to his penis "all the time," *id*. at 303-05, 350; and that 5) Duff used an obscenity to refer to a woman's body part "all the time," *id*. at 352.  Babot also testified that Duff "never stopped doing anything," referring to inappropriate conduct, *id*. at 337, and that even after he stopped "badgering" her, he was "badgering other people," *id*. at 339.  Babot's declaration elaborates upon, explains, and clarifies this deposition testimony.  *See Van Asdale*, 577 F.3d at 999.  For example, she states in her declaration that Duff

5

1    "repeatedly made comments about his penis and referred to it as 'schlong,'" "made frequent

2    comments about the size of his penis," and "made physical gestures toward his crotch."  Babot

3    Decl. ¶¶ 24-26.  She also states that Duff used obscenities to refer to body parts "during every shift

4    that [she] worked with him" and provides examples of such obscenities.  *Id*. at ¶ 27.  Babot also

5    goes into detail in her declaration about comments she overheard Duff make to others, including

6    comments about "female employees' appearances."  *Id*. at ¶¶ 28, 29, 50, 54.[1]

7        The court concludes that there are no "clear and unambiguous" inconsistencies between

8    Babot's deposition testimony and declaration.  Accordingly, there is no basis to exclude portions

9    of Babot's declaration regarding specific incidents of inappropriate conduct by Duff.  Shell's

10   objections are overruled.[2]

## III.   LEGAL STANDARD

12       A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

13   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden

14   of establishing the absence of a genuine issue of material fact lies with the moving party, *see*

15   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the

16   light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

17   (1986) (citation omitted).  A genuine factual issue exists if, taking into account the burdens of

18   production and proof that would be required at trial, sufficient evidence favors the non-movant

19   such that a reasonable jury could return a verdict in that party's favor.  *Id*. at 248.  The court may

20   not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See id*. at 249.

21       To defeat summary judgment once the moving part has met its burden, the nonmoving

22   party may not simply rely on the pleadings, but must produce significant probative evidence, by

23   affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that

[1] The deposition transcript reveals that defense counsel twice cut off Babot or stopped her from testifying about inappropriate statements Duff allegedly made to others.  *See* Pl.'s Dep. 45, 47.

[2] The parties' remaining objections to evidence are denied as moot, as the court did not rely on the disputed evidence in reaching its decision.  The court also notes that each side's submission of evidentiary objections in separate filings violates Local Rule 7-3(a) and (c), which provide that "[a]ny evidentiary and procedural objections" to the motion or opposition to a motion "must be contained within the" brief or memorandum.  [*See* Docket Nos. 67, 71.]

United States District Court
Northern District of California

1    a genuine issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

2    F.2d 626, 630 (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence"

3    to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will

4    not suffice.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Similarly,

5    "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the

6    record, so that no reasonable jury could believe it, a court should not adopt that version of the

7    facts" when ruling on the motion.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

8    **IV.    ANALYSIS**

9           The existence of a single genuine dispute of material fact as to any claim precludes

10   summary judgment.  In the interest of efficiency, this order does not set forth every genuine

11   dispute of material fact for each claim.

12          **A.  Harassment Based on Sex and Failure to Prevent Harassment**

13          FEHA makes it unlawful to harass an employee because of the employee's sex.  Cal. Gov't

14   Code § 12940(j)(1).  The elements of a FEHA harassment claim are: "(1) the plaintiff belongs to a

15   protected group; (2) the plaintiff was subjected to unwelcome harassment because of being a

16   member of that group; and (3) the harassment was sufficiently severe or pervasive to alter the

17   conditions of employment and create an abusive working environment."  *Landucci v. State Farm

18   Ins. Co.*, 65 F. Supp. 3d 694, 703 (N.D. Cal. 2014) (citation omitted).

19          Before suing for violation of FEHA, a plaintiff must file an administrative complaint with

20   the Department of Fair Employment and Housing ("DFEH") within "'one year from the date upon

21   which the alleged unlawful practice or refusal to cooperate occurred,' barring exceptions related to

22   delayed discovery."  *Gardner v. City of Berkeley*, 838 F. Supp. 2d 910, 917-18 (N.D. Cal. 2012)

23   (citing Cal. Govt. Code § 12960(d) (2017)).  Shell moves for summary judgment on this claim on

24   the grounds that the claim is time-barred because Babot filed her administrative complaint with the

25   DFEH on October 18, 2017, and that she was not subjected to any harassing conduct by Duff

26   during the one-year period leading up to that complaint (i.e., October 18, 2016 to October 18,

27   2017).  It also argues that Babot cannot establish that Shell knew or should have known of the

28   harassment and that Babot was not subjected to allegedly harassing conduct after she complained

United States District Court
Northern District of California

1   to Wilson in October 2016.

2       Summary judgment is denied as to Babot's harassment claim.  Under the continuing

3   violation doctrine, "an employer is liable for actions that take place outside the limitations period

4   if these actions are sufficiently linked to unlawful conduct that occurred within the limitations

5   period."  *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1056 (2005); *see also Gardner*, 838 F.

6   Supp. 2d at 918 ("[A] continuing violation may exist where there is . . . a series of related acts

7   against a single individual.").  The doctrine applies when an employer's unlawful acts 1) are

8   sufficiently similar in kind; 2) have occurred with reasonable frequency; and 3) have not acquired

9   a degree of permanence.  *Yanowitz*, 36 Cal. 4th at 1059.  In this case, absent the application of the

10  continuing violation doctrine, Babot's claims concerning events occurring prior to October 18,

11  2016, one year before her DFEH complaint, would be barred.  However, Babot's testimony that

12  Duff engaged in harassing conduct throughout her employment establishes a dispute of fact as to

13  whether the harassment occurred with reasonable frequency and did not acquire a degree of

14  permanence until she was terminated, and thus a dispute of fact exists as to whether her

15  harassment claim is timely under the continuing violation doctrine.  *See id.*

16      Additionally, Babot's testimony that she complained about Duff to her supervisors Wilson

17  and Metcalf in April or May 2016, July 2016, August 2016, and October 2016 establishes a

18  dispute of fact as to whether Shell knew or should have known of Duff's conduct.  An employer is

19  liable for harassment by a non-supervisory employee if the employer "knows or should have

20  known of [the harassing] conduct and fails to take immediate and appropriate corrective action."

21  Cal. Gov't Code § 12940(j)(1); *State Dep't of Health Servs. v. Superior Court*, 31 Cal. 4th 1026,

22  1041 (2003).  Shell does not argue that Wilson and Metcalf's alleged knowledge of Duff's

23  conduct may not be imputed to Shell; it disputes only that Babot complained to them about Duff's

24  alleged sexual harassment.  *See* Reply 12-13.  This constitutes a material dispute of fact.

25      The court also denies summary judgment as to Babot's claim for failure to prevent

26  harassment in violation of FEHA.  A plaintiff alleging a claim of failure to prevent harassment

27  must show that (1) she was subjected to harassment; (2) the defendant failed to take all reasonable

28  steps to prevent harassment; and (3) the failure caused the plaintiff to suffer injury, damage, loss,

United States District Court
Northern District of California

8

1  or harm.  *Lelaind v. City & Cty. Of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008).

2  Whether Shell took reasonable steps to prevent harassment is disputed given Babot's testimony

3  that Duff's conduct persisted even after she complained about him to her supervisors.

### B.   Sex Discrimination and Failure to Prevent Discrimination

5  To establish a prima facie case of sex discrimination, a plaintiff must establish that 1) she

6  is a member of a protected class; 2) she was performing competently in the position she held; 3)

7  she suffered an adverse employment action; and 4) some other circumstance suggests a

8  discriminatory motive.  *Guz v. Bechtel Nat'l, Inc*., 24 Cal. 4th 317, 354 (2000).  Shell argues that

9  Babot cannot establish the fourth element of the prima facie case, because "there is no

10  circumstance suggesting that [Babot's] termination had anything to do with her sex."  Mot. 15.

11  However, Babot presented evidence that male employees, including Keith Stephens, had

12  performance problems and were not disciplined and/or terminated.  *See, e.g.*, DEF 004617 (Lavora

13  noting that Stephens "has struggled with his performance in the few months of being an

14  operator").  Shell disputes whether Stephens is a proper comparator, but "whether two employees

15  are similarly situated is ordinarily a question of fact."  *See Hawn v. Exec. Jet Mgmt., Inc*., 615 F.3d

16  1151, 1157 (9th Cir. 2010) (quotation omitted).  Accordingly, the court finds that Babot has

17  satisfied her "minimal" burden to establish a prima facie case of discrimination based on sex.  *See*

18  *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005).

19  Shell presented evidence that Babot was terminated for performance problems.  Lavora

20  Decl., Oct. 9, 2019, ¶ 12; Layne Decl., Oct. 10, 2019 ¶ 6.  Accordingly, the burden shifts to Babot

21  to show that the asserted reasons for her termination were pretextual.  *Guz*, 24 Cal. 4th at 356.

22  The Ninth Circuit has explained that in the absence of direct evidence of discriminatory animus,

23  "the plaintiff may come forward with circumstantial evidence that tends to show that the

24  employer's proffered motives were not the actual motives because they are inconsistent or

25  otherwise not believable."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998)

26  (analyzing FEHA sex discrimination claim).  Babot presented evidence that on October 25, 2016,

27  two days before Babot's termination, Lavora admitted that other employees, including at least one

28  male employee, were "performing at a lower level" and had "weaker performance" than Babot.

United States District Court
Northern District of California

9

*See* DEF 000150.  Despite this, Lavora and Layne made the decision to terminate Babot and retain Stephens.  Given this evidence, a reasonable jury could conclude that Babot was terminated because she was a woman and not her performance issues.  Accordingly, summary judgment is denied as to Babot's sex discrimination claim.  For the same reasons, summary judgment is denied as to Babot's claim for failure to prevent discrimination in violation of FEHA.  *See, e.g., Aparicio v. Comcast, Inc.*, 274 F. Supp. 3d 1014, 1031 (N.D. Cal. 2017) (denying motion for summary judgment on claims for failure to prevent discrimination under FEHA where underlying race and national origin discrimination claims survived summary judgment).

### C.   FEHA Retaliation, Whistleblower Retaliation, and Wrongful Termination in Violation of Public Policy

"To state a prima facie case for retaliation, [a] plaintiff must establish: (1) she was engaged in protected activity; (2) defendant took an adverse employment action; and (3) a causal connection existed between plaintiff's protected activity and defendant's adverse employment action." *Leland*, 576 F. Supp. 2d at 1094.  Shell moves for summary judgment on Babot's FEHA retaliation claim on the grounds that Babot did not engage in protected activity and that she cannot establish a causal link between her alleged October 15, 2016 complaint to Wilson and her termination.

Summary judgment is denied as to Babot's claim for retaliation under FEHA.  Babot's testimony that she complained about Duff to her supervisors on the four occasions described above establishes a dispute of fact as to whether she engaged in protected activity.  Further, the October 25, 2016 note by Lavora that Babot had "an issue with Rick Duff" is sufficient to create a dispute of fact as to whether there was a causal link between Babot's complaints about Duff and her October 27, 2016 termination.  *See* Lavora Dep. Ex. 1 (DEF 000150-51).  For the same reasons, summary judgment is denied on Babot's claim of whistleblower retaliation in violation of California Labor Code section 1102.5 and claim for wrongful termination in violation of public policy.

### D.   Intentional Infliction of Emotional Distress

"The elements of a cause of action for intentional infliction of emotional distress are (1)

10

United States District Court
Northern District of California

1   outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability

2   of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate

3   causation of the emotional distress." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590,

4   617 (1989).

5        Summary judgment is denied as to Babot's claim for intentional infliction of emotional

6   distress ("IIED"). Shell asserts that this claim "stands or falls" with Babot's FEHA claims and

7   that there is no evidence of "extreme and outrageous" conduct by Shell. Def.'s Mot. 23.

8   However, "[g]iven an employee's fundamental, civil right to a discrimination free work

9   environment, by its very nature, sexual harassment in the work place is outrageous conduct as it

10  exceeds all bounds of decency usually tolerated by a decent society." *Fisher*, 214 Cal. App. 3d at

11  618 (internal citations omitted). As a reasonable jury could find in Babot's favor on her sexual

12  harassment claim, summary judgment on the IIED claim is denied. *See Maridon v. Comcast*

13  *Cable Comm'cns Mgmt., LLC*, No. C-12-2109 EMC, 2014 WL 117103, at *2 (N.D. Cal. Jan. 13,

14  2014) (treating IIED claim as "co-extensive" with plaintiff's harassment claims and denying

15  summary judgment on both harassment and IIED claims).

16       **E.   Punitive Damages**

17       Summary judgment is granted as to Babot's claim for punitive damages. Babot seeks

18  punitive damages under California Civil Code section 3294(b). She argues that Shell is liable for

19  punitive damages because alleged managing agent Tom Rizzo ratified Lavora's decision to

20  terminate her employment. *See* Pl.'s Opp'n 25. "Ratification is the confirmation and acceptance

21  of a previous act." *Cruz v. Homebase*, 83 Cal. App. 4th 160, 168 (2000) (quotation and citation

22  omitted). "For purposes of determining an employer's liability for punitive damages, ratification

23  generally occurs where, under the particular circumstances, the employer demonstrates an intent to

24  adopt or approve oppressive, fraudulent, or malicious behavior by an employee in the performance

25  of his job duties." *Coll. Hosp. Inc. v. Superior Court*, 8 Cal. 4th 704, 726 (1994). The California

26  Supreme Court has held that "[c]orporate ratification in the punitive damages context requires

27  actual knowledge of the conduct and its outrageous nature." *Id.* This is because "[a] corporation

28  cannot confirm and accept that which it does not actually know about." *Cruz*, 83 Cal. App. 4th at

168.  Here, Babot has not presented any evidence that Rizzo had actual knowledge of Duff's alleged harassment and Babot's supervisors' alleged failure to address the ongoing harassment in her unit.  Accordingly, she has failed to show a dispute of material fact as to Rizzo's ratification of the alleged wrongful conduct.  Summary judgment is therefore granted as to Babot's claim for punitive damages based on a ratification theory.[3]

## V.    CONCLUSION

For the foregoing reasons, Shell's motion for summary judgment is granted in part and denied in part.  Summary judgment is granted as to Babot's claim for punitive damages only.  The July 15, 2020 case management conference is CONTINUED to September 30, 2020 at 1:30 p.m. An updated case management statement is due by September 23, 2020.

**IT IS SO ORDERED.**

Dated: July 8, 2020



Donna M. Ryu
United States Magistrate Judge

---

[3] At the hearing, Babot argued for the first time that the court should deny summary judgment as to her claim for punitive damages because Shell had not satisfied its burden of production on the issue, citing *Davis v. Kiewit Pacific Co.*, 220 Cal. App. 4th 358, 369 (2013).  In *Davis*, the court held that a party moving for summary judgment on punitive damages bears "the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact."  Babot had the opportunity to raise this argument in her opposition but did not do so, and so deprived Shell of the opportunity to respond.  Accordingly, the court declines to consider this argument.